[Civ. No. 7021.   Third Dist.   Feb. 23, 1945.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Respondent, v. SACRAMENTO VALLEY WALNUT GROWERS ASSOCIATION (a Corporation), Appellant.

Charles A. Wetmore, Jr., for Appellant.

Robert W. Kenny, Attorney General, Clarence A. Linn, Deputy Attorney General, and Forrest M. Hill and Ralph R. Planteen for Respondent.

ADAMS, P. J.—Plaintiff brought this action to recover from defendant contributions under the California Unemploy-

ment Insurance Act (Stats. 1935, p. 1226, as amended, Deering's Gen. Laws, 1937, Act 8780d) together with interest and penalties, upon the basis of wages paid by the association to certain employees during the period from January 1, 1938, to June 30, 1939. At the trial of the case it was agreed by counsel for the parties that the only issue for determination was whether one N. F. Todd was an employee of defendant during such period, it being conceded that defendant corporation did not otherwise have a sufficient number of employees to become subject to the act. The trial court found that Todd was an employee of defendant, and rendered judgment for plaintiff.

Defendant and appellant is an association of walnut growers, incorporated under the provisions of the Cooperative Marketing Act, its membership being limited to growers. It is a component part of the California Walnut Growers Association referred to as the Central, the latter being, however, a separate corporation whose membership is made up of representatives of various local growers' associations throughout the state, each of which designates one of its members to represent it as a member of the Central.

During the period for which contributions are claimed in this action, Todd was a member and a director of the defendant Local, and was designated by it to be its representative at meetings of the Central, and a member of Central's board of directors. During this period Todd made five trips to Los Angeles to attend meetings of the Central. In connection with these trips certain moneys were paid to him by defendant, and the question presented in this case is whether he was an employee of defendant within the meaning of the applicable statute.

While the point was not raised in the trial court, appellant, in its opening brief on this appeal, contends that if Todd were held to be an employee of the Local, nevertheless the corporation would not be liable for contributions under the Unemployment Insurance Act because Todd was engaged in agricultural labor, and therefore exempt. This contention has been decided against appellant by the recent decision of the Supreme Court in *California Employment Commission* v. *Butte County Rice Growers Assn.,* 25 Cal.2d 624 [154 P.2d 892], and need be given no further consideration on this appeal.

█ The sole question then is whether there is sufficient evidence in the record to sustain the finding of the trial court that Todd was an employee of defendant during the period under consideration. As the record is short, a summary of the testimony presented may be set forth without unduly prolonging this opinion. Plaintiff called Mr. Hogan, secretary and manager of defendant corporation, who testified that during 1938 Todd was the representative of defendant who attended the meetings of the Central; that during said time Todd was one of the directors of defendant; that Todd was selected as the member of the Local to be its representative on the board of the Central, and that he went to its meetings; that Todd was never on the payroll of the Local and never received any compensation; that moneys were, however, paid to him by defendant; that he had served as a director of the Central for several years, but finally became financially embarrassed and could not afford to go to its meetings, so defendant agreed to pay him ten dollars a day, or twenty dollars a trip, to cover his expenses, or part of them; that Todd made about five trips in 1938; that payments to Todd were not set forth in any of defendant's accounts as wages, but the amounts paid were charged to an account entitled ''Other expense and Loss''; that no compensation insurance was carried on Todd; that money was furnished to Todd by the Central for expenses in addition to the amount given him by defendant, but it was not sufficient to cover his expenses; that Todd never received any remuneration for soliciting members for defendant but on some occasions was given mileage. An auditor of the California Department of Employment, who examined books and records of defendant, testified that they showed that money was paid to Todd to cover five different trips to Los Angeles in 1938, at $20 each; that he had examined the minutes of defendant for January 12, 1935, which recited that it was moved and seconded and carried that Todd ''be paid ten dollars per diem for his services in attending meetings of the board of directors of the central association.'' The articles of incorporation and the by-laws of the Central, and those of defendant, together with the agreement between defendant and the Central, were introduced, but no other evidence adduced.

Appellant argues that this evidence does not support a conclusion that Todd was its employee; that it shows that he

was not on its payroll and never received any compensation, that no compensation insurance was carried on him nor was any money paid to him taken into consideration in the annual payroll statement made to its compensation insurance carrier; that Todd was not employed to represent defendant before the Central, but became a member of its board of directors, and, as such presumably voted at the meetings and used his own judgment; that it cannot be said that while he was acting as such director (of the Central) he was an employee of defendant subject to its control or supervision; that there is no evidence that any supervision or control was exercised over him by anyone connected with defendant, and that defendant did not retain the right to direct the manner in which the business of the Central should be done, nor the results to be accomplished, and that such right is the principal test whether Todd was or was not an employee.

Respondent on the other hand argues that the record shows that Todd was "hired" to go to Los Angeles to represent defendant at the meetings of the Central; that the fact that the nature of his work gave him a certain amount of freedom from supervision did not take him out of the classification of an employee, as the *right* to control and not its actual exercise determines whether or not the relationship exists; that the evidence shows that Todd was performing services for defendant and this raises a presumption that he was an employee which defendant has not overcome.

The only authorities cited by appellant are *Deecy Products Co. v. Welch,* 124 F.2d 592, and 39 Corpus Juris, at pages 33 and 35 defining master and servant.

In *Deecy Products Co. v. Welch, supra,* one Wilson was the statutory clerk of the plaintiff corporation during the period in controversy, kept the minutes of such meetings as were called during the year, and made no charge for his services as clerk, same being incidental to his duties as attorney for the corporation. The evidence showed that during the period in question there was but one meeting of the stockholders which required about one-half hour of Wilson's time, in addition to which he spent about five minutes dictating the minutes. These activities constituted his total services and duties as clerk during the year. The state statute required each corporation to have a clerk, and his duties were defined by the by-laws of the corporation. The court said that an employee is one who meets the tests of the more or less established con-

cept of "the legal relationship of employer and employee," and that one who does not meet these tests is not an employee within the meaning of the Social Security Act (42 U.S.C.A., §§ 1101 and 1301(a) (6)), and this is the portion of the opinion upon which defendant relies. But the court held, nevertheless, that as clerk of the corporation Wilson was an employee, though he received no compensation for his services as clerk, but did the work of clerk as incidental to his duties as attorney for the corporation; that the clerk was subject to the board of directors which *could* direct him in the performance of the duties of his office though it did not actually do so; that it could not be said that he had no superiors in the corporation who could give him orders, and that the powers of the board were not nullified by the fact that Wilson was the only one familiar with the legal procedure involved; that he was *subject* to control.

In 39 Corpus Juris, pp. 33 and 35, cited by appellant, it is said that the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished; that he is deemed to be a master who has the superior choice and direction of the servant and whose will the servant represents not merely in the ultimate results of the work, but in the details.

From the foregoing appellant argues that as the right to direct the manner in which the business shall be done as well as the result to be accomplished is the test to be applied in determining whether Todd was an employee of defendant, that here there is no evidence that any such right was retained or exercised, and that it necessarily follows that Todd cannot be held to be its employee.

The act here under consideration provides in section 6.5 that "employment," subject to the other provisions thereof, "means service . . . performed for wages or under any contract of hire, written or oral, express or implied." Section 7 of said act excludes certain kinds of labor from the term "employment," but is not pertinent here. The trial court in the case before us found that Todd was the representative of defendant for the purpose of representing it at the meetings of the Central; that as such representative he rendered services for defendant for which services he was paid $10 per diem; that in performing such services Todd was subject to the direction and control of defendant, not only as to the results

to be achieved, but also as to the means and methods to be used in attaining such results; and that defendant had the right to discharge Todd at any time. From these facts it concluded that Todd was an employee of defendant, and that. the remuneration received by him was wages. It thus appears that the trial court accepted appellant's contention as to what elements must appear in order to establish the relationship of employer and employee, but found that such elements appeared.

However, in *B. P. Schulberg Productions* v. *California Emp. Com.*, 66 Cal.App.2d 831, 834 [153 P.2d 404], it was held that the Legislature did not intend to incorporate into the Unemployment Insurance Act the common law concept of master and servant, and that the words used in the act are not to be considered in their rigid, precise or dictionary meanings, but rather as defined by the act itself which evidences a legislative intent to give the words a broad and liberal construction rather than to apply any narrow, technical or even previously established legal definitions.

Giving the language of section 6.5 of the act such liberal construction the evidence in the case seems ample to establish that Todd performed services for defendant under a contract of hire, either express or implied; also that the compensation received by him was wages. But even applying the rule contended for by appellant, we think it cannot be said that there is not sufficient evidence in the record, together with reasonable inferences therefrom, to support the foregoing findings, bearing in mind that all reasonable presumptions are to be indulged in support of such findings (*City of Los Angeles* v. *Knapp*, 7 Cal.2d 168, 172-173 [60 P.2d 127]), and that the provisions of the California Unemployment Insurance Act are to be liberally construed to accomplish the social and economic purposes for which they were enacted (*California Employment Commission* v. *Butte County Rice Growers Assn.*, *supra*, at page 630.

While appellant argues that moneys paid to Todd were merely for his expenses and not for his services, the articles of incorporation and by-laws of the Central were in evidence, and it appears therefrom that the Central itself paid the expenses of the directors. Article VI of those by-laws provides: "The Directors shall receive such compensation and expenses as may be determined by the members"; and Mr. Hogan testified that money was furnished Todd by the Central to cover

his expenses, though he stated that it was not enough. Also the minutes of the defendant association recite that Todd was to be paid $10 per diem *for his services* in attending meetings of the board of directors of central association; and we think that from the foregoing the trial court was fully justified in concluding that Todd was paid the $10 per day for services rendered by him to defendant.

As to whether in performing his duties as the representative of defendant at meetings of the Central Todd was subject to the direction and control of defendant's board of directors, while there is no direct evidence that such board actually did direct him, there is no evidence that it did not, or that it did not retain the right to do so. Obviously, when Todd attended meetings of the Central he acted not for himself alone, but for the entire membership of defendant Local, and there is ample room for an inference that in representing the Local his actions and conduct were subject to direction by the directors of the Local, who designated him as such representative; at least that the directors had the right to direct him as to how he should vote on matters coming up before the Central for determination. In *Social Security Board* v. *Warren,* 142 F.2d 974, the members of an executive committee of a corporation, of which committee Warren was a member, held weekly meetings at 8:30 a.m. for which services they were paid $5 per meeting. They determined matters of policy requiring action prior to the next monthly meeting of the board of directors, approved loans already made, established credit for borrowers, and passed upon bills for expenses. There was no evidence that the directors had ever given any instructions to the members of the committee as to what should be done by them, but the court said that they had a *right* so to do; and it was held that the payments to Warren constituted wages as found by the Social Security Board. (Also see *McKesson-Fuller-Morrison Co.* v. *Industrial Commission,* 212 Wis. 507 [250 N.W. 396].

From the fact that defendant's board of directors had the power to select its representative and fix his compensation for services, some right to control or direct his conduct is inferable; and the board apparently had the right to discontinue him as such representative at any time, which right is one of the elements of control. (*Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577, 581-582 [250 P. 570]; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114, 120 [210 P. 820].)

The very nature of the duties and powers given to the Central of whose board of directors Todd, by virtue of his representation of defendant, was a member, indicates that defendant's board of directors would naturally give directions to and exercise some control over the conduct of their representative, since, under the agreement entered into between the Locals and Central the latter is the sole selling agency for defendant's walnuts, and, also, by said agreement is given power ''to prescribe and enforce such rules, regulations and/or practices as in its sole judgment it believes proper to govern and control the methods, manner and means used, permitted or employed by Local in receiving, handling, processing, or packing walnuts. . . .''

It is said in the very case relied upon by appellant, *Deecy Products Co.* v. *Welch, supra,* that ''No general rule can be stated defining the control required to bring one within the scope of the legislative intent. The only thing that can be done is to examine the facts of each case and then determine whether there is present sufficient control and supervision to make one an employee.''

As we cannot say that there was not sufficient evidence before the trial court, together with proper inferences to be drawn therefrom, to sustain its findings and judgment, its judgment should be and is affirmed.

Peek, J., and Thompson, J., concurred.